# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA O.,[1] <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL,[2] <br> Commissioner of Social Security, <br><br> Defendant. | Case No. 2:19-cv-00689-MAA <br><br> **MEMORANDUM DECISION AND ORDER AFFIRMING DECISION OF THE COMMISSIONER** |

On January 29, 2019, Plaintiff filed a Complaint seeking review of the Social Security Commissioner's final decision denying her applications for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act. This matter is fully briefed and ready for decision. For the reasons discussed below, the Commissioner's final decision is affirmed, and this action is dismissed with prejudice.

---

[1] Plaintiff's name is partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] The Commissioner of Social Security is substituted as the Defendant pursuant to Federal Rule of Civil Procedure 25(d).

## PROCEDURAL HISTORY

On February 1, 2016, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging disability beginning on September 24, 2013. (Administrative Record [AR] 158, 489, 501.) Plaintiff alleged disability because of a "Severe case of Cough Variant Asthma," "Excessive production of Phlegm," and "Allergic rhinitis." (AR 488, 500.) After her applications were denied initially, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 564-65.) At a hearing held on November 14, 2017, at which Plaintiff appeared with counsel, the ALJ heard testimony from Plaintiff and a vocational expert. (AR 453-87.)

In a decision issued on February 26, 2018, the ALJ denied Plaintiff's applications after making the following findings pursuant to the Commissioner's five-step evaluation. (AR 158-67.) Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of September 24, 2013. (AR 160.) She had severe impairments consisting of asthma, chronic bronchitis, and fibromyalgia. (*Id.*) She did not have an impairment or combination of impairments that met or medically equaled the requirements of one of the impairments from the Commissioner's Listing of Impairments. (AR 161.) She had a residual functional capacity for medium work except she was to "avoid all exposure to air pollutants (fumes, odors, gases, poor ventilation, etc.)." (*Id.*) Based on this residual functional capacity, she could perform her past relevant work as a survey worker and a casher, as actually and generally performed. (AR 166.) Thus, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act. (AR 166-67.)

Plaintiff requested review by the Appeals Council and, as part of the request, submitted additional evidence. (AR 14-452, 612-17.) On December 12, 2018, the Appeals Council issued an order stating that it considered only the additional evidence that related to the period on or before the date of the ALJ's decision, but

that it ultimately denied the request for review. (AR 1-7.) Thus, the ALJ's decision became the final decision of the Commissioner.

## DISPUTED ISSUE

The parties raise the following disputed issue: whether the ALJ properly considered the opinion of Plaintiff's treating physician, Dr. Ishimori. (ECF No. 21, Parties' Joint Stipulation ["Joint Stip."] at 4.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's final decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The Court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Lingenfelter*, 504 F.3d at 1035. Where evidence is susceptible of more than one rational interpretation, the Commissioner's interpretation must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

## DISCUSSION

**A.    Legal Standard.**

A treating physician's opinion is entitled to special weight because he or she is "most able to provide a detailed, longitudinal picture" of a claimant's medical

3

impairments and bring a perspective to the medical evidence that cannot be obtained from objective medical findings alone. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

If the treating physician's opinion is uncontroverted by another doctor's opinion, it may be rejected only for "clear and convincing" reasons. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). If a treating physician's opinion is controverted, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record. *See id*. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751 (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

Here, Dr. Ishimori's opinion was inconsistent with the opinions of another treating physician (AR 2564-68), an examining physician (AR 1237-45), and two state agency review physicians (AR 507-09, 521-23). Thus, the ALJ was required to state specific and legitimate reasons based on substantial evidence in the record before rejecting Dr. Ishimori's opinion.

**B.    Background.**

In August 2017, Dr. Ishimori, a rheumatologist, saw Plaintiff for the first time. (AR 1320-21, 1427-31.) In pertinent part, Plaintiff reported shortness of breath, pain "all over her body when she walks or lays down," migraine headaches, sleeping difficulties, and depression. (AR 1426-27.) Dr. Ishimori conducted a

4

"fibromyalgia trigger point exam" and reported positive findings in all tested areas of Plaintiff's body. (AR 1430.) Dr. Ishimori diagnosed fibromyalgia and a chronic cough. (AR 1431.) Dr. Ishimori recommended weight loss and better sleep hygiene, prescribed Gabapentin, asked Plaintiff to follow up with a pulmonary clinic, and asked Plaintiff to follow-up with Dr. Ishimori in twelve weeks for a re-evaluation. (*Id*.)

In September 2017, Dr. Ishimori issued an opinion about Plaintiff's functioning, based on the August 2017 visit. (AR 1361-65.) In pertinent part, Dr. Ishimori stated that, at multiple tender points, Plaintiff experienced sharp pain for five minutes followed by two hours of stiffness. (AR 1362.) However, Dr. Ishimori stated that Plaintiff was capable of low stress jobs. (*Id*.) As to functional limitations, Dr. Ishimori stated that Plaintiff could sit, stand, or walk for less than two hours in an eight-hour workday (AR 1363); could lift less than ten pounds, rarely (AR 1364); and would be absent from work four days per month (*id*.).

In December 2017, Dr. Ishimori performed a follow-up evaluation. (AR 189-98.)[3] Plaintiff reported that she had stopped taking Gabapentin in September 2017 because of a surgery and instead had started using cannabidiol ("CBD") oil, which she felt "has helped with her symptoms." (AR 189.) Plaintiff did complain of itchy hives on her skin. (*Id*.) Dr. Ishimori performed another fibromyalgia trigger point exam, which was positive. (AR 191.) Dr. Ishimori again diagnosed fibromyalgia and a chronic cough. (AR 192.) Dr. Ishimori discontinued the Gabapentin (AR 197), discussed with Plaintiff the efficacy of CBD oil (AR 192), recommended Allegra for eczema (*id*.), encouraged "low grade exercise" (*id*.), and recommended that Plaintiff return to see Dr. Ishimori "as needed" (*id*.).

---

[3] The evidence of Dr. Ishimori's December 2017 follow-up evaluation was presented for the first time to the Appeals Council. (AR 2.) The Court considers this evidence to determine whether the ALJ's decision was supported by substantial evidence. *See Brewes v. Commissioner of Social Sec. Admin*., 682 F.3d 1157, 1163 (9th Cir. 2012).

**C.     Analysis.**

The ALJ gave "no weight" to Dr. Ishimori's September 2017 opinion for three reasons. (AR 16.) The Court reviews each reason in turn. As discussed below, two of the three reasons were specific and legitimate reasons based on substantial evidence.

**1.     Inconsistency with Plaintiff's stated ability to sit.**

The ALJ first stated that Dr. Ishimori's opinion was inconsistent with Plaintiff's testimony about her ability to sit. (AR 166.) While Dr. Ishimori limited Plaintiff to less than two hours of sitting in an eight-hour workday (AR 1363), Plaintiff testified that she could sit for "maybe three to four hours" in an eight-hour day. (AR 465.)

"A conflict between a treating physician's opinion and a claimant's activity level is a specific and legitimate reason for rejecting the opinion." *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) (citing *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001)); *see also Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (holding that a treating physician's opinion was properly rejected where the assessed limitations were inconsistent with and more restrictive than the record on the whole, including, *inter alia*, the physician's treatment notes, the opinions of other physicians, and the claimant's self-reported limitations); *Reichley v. Berryhill*, 723 F. App'x 540, 541 (9th Cir. 2018) (holding that an ALJ satisfied the higher "clear and convincing" standard where a treating physician's fibromyalgia questionnaire "assessed limitations exceeded those reported by [the claimant]"). Here, for purposes of an eight-hour workday, Dr. Ishimori's assessed limitation in sitting for less than two hours was inconsistent with Plaintiff's admitted ability to sit for three to four hours.

Plaintiff contends that this inconsistency, which reflected a difference of as little as one hour plus one minute of sitting, was too insignificant to justify rejecting

Dr. Ishimori's opinion. (Joint Stip. at 7-8.) The inconsistency identified by the ALJ must be significant in order to form a specific and legitimate basis to reject a treating physician's opinion. *See Sprague v. Bowen*, 812 F.2d 1226, 1230-31 (9th Cir. 1987) (finding insignificant a purported inconsistency between a treating physician's opinion about a claimant's back pain and the claimant's efforts to learn to type); *see also Heine-O'Brien v. Astrue*, 359 F. App'x 699, 700 (9th Cir. 2009) (finding insignificant a difference between a treating doctor's opinion and the claimant's testimony as to whether the claimant could walk for thirty or only fifteen minutes).

But here, the inconsistency that the ALJ identified — less than two hours of sitting versus three to four hours of sitting — was sufficiently significant, depending on how it is interpreted. Although Plaintiff interprets her testimony as indicating only one hour plus one minute of additional sitting, the ALJ reasonably could have interpreted her testimony as indicating more than double the time of sitting, which was a significant inconsistency. *See Connett*, 340 F.3d at 875 (holding that inconsistencies of similar magnitude, as well as a lack of support by treatment notes, were sufficient to reject a treating physician's opinion). Because the ALJ's interpretation was permissible, it is upheld. *See Orn*, 495 F.3d at 630 (where evidence is susceptible of more than one rational interpretation, the Commissioner's interpretation must be upheld). Accordingly, this was a specific and legitimate reason based on substantial evidence to reject Dr. Ishimori's opinion.

### 2. Apparent sympathy for Plaintiff.

The ALJ next stated that Dr. Ishimori's opinion appeared to have been based on sympathy: "While the opinion of a treating source is generally entitled to significant weight[,] that is only applicable if supported by objective evidence, and such is not the case regarding the opinion of Dr. Ishimori as functional limitations indicated appear to be a sympathetic rather than objective opinion in the absence of

supporting evidence." (AR 166.)

An ALJ must offer "facts to support [his] suspicion" that an opinion was issued out of "sympathy" for the claimant. *See Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017). Here, the ALJ offered the fact that Dr. Ishimori's opinion was unsupported by objective evidence, which led to an inference that the opinion was based on something other than objective evidence, namely, sympathy for Plaintiff. Such a fact, however, has less meaning for fibromyalgia, which is not amenable to support by objective medical evidence. *See Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("The ALJ erred by effectively requiring objective evidence for a disease that eludes such measurement.") (citation and internal quotation marks omitted); *see also Revels*, 874 F.3d at 663 ("Fibromyalgia is diagnosed 'entirely on the basis of patients' reports of pain and other symptoms,' and 'there are no laboratory tests to confirm the diagnosis.'") (quoting *Benecke*, 379 F.3d at 590). Thus, the basis for the inference here that Dr. Ishimori wrote the opinion from sympathy was not well-founded. This was not a specific and legitimate reason based on substantial evidence to reject Dr. Ishimori's opinion.

### 3. Inconsistency with Plaintiff's conservative treatment.

The ALJ finally stated that Dr. Ishimori's opinion was inconsistent with Plaintiff's treatment: "[Dr. Ishimori] opines extreme restrictions preventing work activity yet advises minimal/conservative treatment, with follow up not scheduled for 3-4 months." (AR 166.)

"Any evaluation of the aggressiveness of a treatment regimen must take into account the condition being treated." *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017). For fibromyalgia, the Ninth Circuit has considered treatment at both ends. *Compare Rollins,* 261 F.3d at 856 (proper to characterize fibromyalgia treatment as conservative when it consisted of a recommendation to "avoid strenuous activities"); *with Revels*, 874 F.3d at 667 (improper to characterize

fibromyalgia treatment as conservative when it consisted of facet and epidural injections in the neck and back, steroid injections in the hands, and pain medications such as Valium, Vlector, Soma, Vicodin, Percocet, Neurontin, Robaxin, Trazodone, and Lyrica).

Plaintiff's treatment for fibromyalgia was closer to the conservative treatment in *Rollins* than to the non-conservative treatment in *Revels*. Dr. Ishimori's initial treatment plan consisted of a course of Gabapentin (which Plaintiff stopped taking after one month), recommendations for weight loss and better sleep hygiene, and a follow-up visit twelve weeks later. (AR 189, 1431.) At the follow-up visit, the Gabapentin was discontinued, and the treatment plan consisted of CBD oil (which Plaintiff apparently had obtained on her own initiative), Allegra for eczema, "low grade exercise," and no future plans to see Dr. Ishimori other than "as needed." (AR 189, 192, 197.) Plaintiff's treatment was less aggressive and thus distinguishable from the treatment in *Revels*, which consisted of numerous types of injections and numerous prescription pain medications. *See Revels*, 874 F.3d at 667. Thus, this was a specific and legitimate reason based on substantial evidence to reject Dr. Ishimori's opinion.

**D.      Conclusion.**

One of the three reasons stated by the ALJ to reject Dr. Ishimori's opinion was invalid, given that the ALJ did not support his reasoning that the treating physician's opinion apparently was written because of sympathy. The error was harmless because the ALJ otherwise stated two specific and legitimate reasons based on substantial evidence. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (an error is harmless where it is "inconsequential to the ultimate nondisability determination"); *Monta v. Saul*, 776 F. App'x 473, 474 (9th Cir. 2019) (ALJ's erroneous reason in rejecting a medical opinion was harmless when other reasons were specific and legitimate).

Substantial evidence is only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Richardson*, 402 U.S. at 401; *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (commenting that the evidentiary threshold for "substantial evidence" is "not high"). The Court cannot substitute its own judgment for that of the ALJ where substantial evidence supports the ALJ's findings. *See Robbins v. Social Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ.") (citation omitted). In sum, reversal on this basis is not warranted.

**ORDER**

It is ordered that Judgment be entered affirming the decision of the Commissioner of Social Security and dismissing this action with prejudice.

DATED: March 23, 2020

MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE